IN THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| Mike C. Ward,<br><br>   **Plaintiff,**<br><br>v.<br><br>**Dirk Kempthorne, in his official capacity as Secretary, United States Department of Interior.**<br><br>   **Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No. 2:08CV1DAK** |

   This matter is before the court on Defendant, United States Government's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The court held a hearing on the motion to dismiss on July 16, 2008. At the hearing, Defendant was represented by Stephen Sorenson. Plaintiff was represented by Nan Bassett. At the hearing, the court allowed Plaintiff to file a supplemental response. After carefully considering the memoranda and other materials submitted by the parties, as well as the law and facts relating to this motion, the court enters the following Memorandum Decision and Order.

## Background

   Plaintiff was employed by the United States Bureau of Reclamation ("the Agency") as a Supervisory Contract Specialist from 1999 to 2005. On April 3, 2005, Plaintiff received a letter reassigning him from his supervisory position to another position known as "contract specialist." In pertinent part, the letter gave the following reasons for Plaintiff's reassignment:

> This reassignment is being effected to promote the efficiency of
> the service and to utilize your talents in the technical spectrum of
> activities and projects . . .

> This reassignment is in no way a personal reflection on your
> performance or conduct nor does it confer negatively on your
> employment history or the contributions you have made to the
> Bureau of Reclamation. This reassignment is being effected solely
> for the reasons stated and the efficiency of the service.

Although this reassignment did not impact Plaintiff's pay grade, benefits, or full-time work schedule, his new position did not include any of his previous management and supervisory responsibilities.

Shortly after receiving the letter, Plaintiff approached Roger Slater ("Mr. Slater"), a human resource officer, to ask about the options available to him to oppose his change of position. During that meeting Mr. Slater informed him that he could either file a grievance through the internal process or, if he had evidence of an EEO violation, he could file a claim with the EEOC. Additionally, Mr. Slater informed Plaintiff that he could not pursue both an internal grievance and the EEOC process. Because Plaintiff had no information indicating that his reassignment was based on any EEO violation he chose to file an internal grievance.

To begin the grievance process, Plaintiff met with Darryl Beckerman ("Mr. Beckerman"), his first line supervisor, on April 29, 2005. Despite the reasons given in the March 31 letter, Mr. Beckerman stated during this meeting that the reassignment *was* based on performance issues and also on his belief that Plaintiff had been biased in his investigation of an EEO complaint filed by a non-white employee. Plaintiff was "shocked" at Mr. Beckerman's statements because he had never been previously informed of any "performance issues," and management had not followed any of the procedures afforded to employees alleged to have performance issues. After this meeting, Plaintiff asserts that he began to recall several other situations involving agency management which suggested to him that his reassignment was not only retaliatory, but also discriminatory.

After making this "realization," Plaintiff became concerned about Mr. Slater's

2

representation that he could not file an EEO claim once he filed an internal grievance. Because of this concern, Plaintiff's counsel contacted the Agency's attorney on or about May 2, 2005, to verify Mr. Slater's statements. During this conversation, the Agency's attorney, Jarred Bennett, cited Plaintiff's attorney to a federal regulation which he believed validated Mr. Slater's claim. In pertinent part, this provision states that employees "have the right to choose between a negotiated grievance procedure or the EEO complaint procedure . . . [and] the aggrieved individual is required to elect either the statutory procedure for discrimination (the internal EEO process) or the negotiated grievance procedure." 29 C.F.R. §1614.301(a). Based on Plaintiff and his counsel's understanding of this rule, he continued with his grievance and did not pursue the possibility of filing an EEO claim.

On July 11, 2005, Plaintiff and his counsel met with Agency management in an attempt to resolve the dispute. During this meeting, Defendants again reiterated that by filing a grievance Plaintiff had forgone the option of pursuing an EEO complaint. Additionally, for the first time, Defendant informed Plaintiff that "even if" he did have a valid EEO claim, the 45-day statute of limitation for filing such a claim had already run. Plaintiff's counsel apparently did not debate the appropriateness of the statement at the meeting. At the conclusion of this meeting, Plaintiff's counsel agreed to present Defendants with a settlement proposal. In his written proposal, however, Plaintiff expressed an intent to bring an EEO claim in the future, but did not analyze the issue or present a basis for how this would be possible.

On August 19, 2005, Plaintiff received a response from Defendant claiming that the grievance had been resolved, and that any EEO claim would now be untimely. Plaintiff did not challenge the issue of whether an EEO claim would be untimely. But, on August 26, 2005, Plaintiff requested an official review of the decision. The Agency approved this request and, on September 9, 2005, a hearing officer was assigned. The parties ultimately agreed to a hearing

3

date in November of 2006.  But, on October 11, the Agency filed a request for reconsideration of the examiner's failure to dismiss the grievance, and a request that the Department of Interior's head of Human Resources take jurisdiction and cancel the hearing.  While drafting a memorandum in opposition to this request, Plaintiff's attorney discovered an Agency rule which states:

> . . . if the matter being grieved becomes the subject of an EEO complaint by the grievant, the official considering the grievance will terminate its processing and refer it to the bureau equal employment officer. . . Whenever an employee makes an allegation of discrimination in connection with a grievance, the official considering it promptly terminates processing the grievance, and refers it to the bureau of Equal Employment Opportunity Officer for appropriate action . . ."

370 Department of Interior Department Manual 771, 3.14, 3.18 (2007).

Upon discovering this rule, Plaintiff immediately withdrew his agency grievance and began the EEO claim process.  Although Plaintiff has requested a final agency decision from the Department of Interior regarding his EEO claim, to date, no final decision has been rendered.

## Discussion

### I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Defendant moves to dismiss this case for lack of subject matter jurisdiction, claiming this court lacks jurisdiction because Plaintiff failed to exhaust his administrative remedies.  In opposition to Defendant's motion, Plaintiff argues that although he missed his 45-day filing deadline, equitable tolling should allow his claim to proceed.

Before a court can reach the merits of an employment discrimination claim against a federal agency, the employee must demonstrate to the court that he or she has exhausted all of his or her administrative remedies.  *Jones v. Runyon*, 91 F.3d 1398, 1399-1401 (10th Cir. 1996). Title 29, Section 1614.105(a) of the Code of Federal Regulations sets out the pre-complaint administrative process that must be exhausted before a Title VII action may be brought.  The section states:

> Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult [an EEOC] Counselor prior to filing a complaint in order to try to informally resolve the matter.
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

While a timely administrative charge is a prerequisite to filing a Title VII action, time-filing requirements are not jurisdictional prerequisites to suit, but are more like statutes of limitation which are subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385. 393 (1982). In limited circumstances, the Tenth Circuit has applied equitable tolling to 29 C.F.R. §1614.105(a)(1). *Biester v. Midwest Health Services*, 77 F.3d 1264, 1267-68 (10th Cir. 1996). However, the circuit has generally recognized that equitable tolling is only appropriate if the circumstances of the case "rise to the level of active deception which might invoke the powers of equity to toll the limitations period." *Cottrell v. Newspaper Agency Corp.,* 590 F.2d 836, 838-39 (10th Cir. 1979). "For instance, equitable tolling may be appropriate where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts.'" *Martinez v. Orr*, 738 F.3d 1107, 1110 (10th Cir. 1984). "Likewise, if a plaintiff is 'actively misled,' or 'has in some extraordinary way been prevented from asserting his or her rights,' [the court] will permit tolling of the limitations period." *Id.*

"The Tenth Circuit has invoked the equitable tolling doctrine only in particularly egregious circumstances." *Brucks v. O'Neill*, 184 F. Supp. 2d 1103, 1110 (2001). For example, in *Donovan v. Hahner*, a plaintiff's employer "deliberately concealed the fact that [he] had actually been discharged, as opposed to having been laid off" until March 15, approximately two months after his discharge. 736 F.2d 1421, 1427 (10th Cir. 1984). Because the employer did not deny misleading the plaintiff, and because the plaintiff "made an effort to discover his true

employment status," prior to missing his filing deadline, the Tenth Circuit equitably tolled the statute of limitations to March 15, the date the plaintiff became aware of the basis for his claim. *Id.* Similarly, in *Martinez v. Orr*, equitable tolling was invoked where an EEOC letter misled a plaintiff into "unknowingly waiving his right to sue" by missing his filing deadline. 738 F.2d 1107, 1112 (10th Cir. 1984). In support of this holding, the Tenth Circuit noted that the case, "d[id] not involve an unreasonable or unnecessary delay . . . [but rather that the plaintiff] acted with utmost diligence [in] pursuing his claim." *Id.* Finally, the court noted that although "a trained lawyer or particularly prudent and savvy layperson might recognize the inviolability of [a filing] deadline and thus would be certain to preserve the right to sue," it was not unreasonable for a pro se recipient to make such an error. *Id.* at 1111.

In addition to *Donovan* and *Martinez*, the Tenth Circuit has held equitable tolling to be inappropriate where a plaintiff fails to act diligently in pursuing their claim. In *Biester v. Midwest Health Services*, a Plaintiff's case was dismissed because he had filed his claim five days after the applicable filing deadline. 77 F.3d 1264, 1265 (10th Cir. 1996). In an attempt to invoke the equitable tolling doctrine, Plaintiff claimed that his mental illness, which caused him to have "absolutely no concept of time, date, or day," justified tolling the state of limitations. *Id.* at 1266. In rejection of the plaintiff's argument, the *Biester* court held that equitable tolling was inappropriate because the plaintiff failed to allege "the exceptional circumstances required by most courts" to invoke tolling, and because he had been represented by a competent attorney who had adequate time to file his action during all times pertinent to his claim. *Id.* at 1268.

Like the plaintiffs in *Donovan* and *Martinez*, in the present case Plaintiff argues that equitable tolling is appropriate based on Defendant's failure to disclose the true reason for his reassignment or to make him aware of the 45-day deadline in a timely manner. While Plaintiff's factual claims are somewhat similar to those alleged in the above mentioned cases, the present

6

case is distinguishable based on Plaintiff's failure to act diligently in pursuing his claim. On April 29, 2005, Plaintiff first became aware of the allegedly discriminatory nature of his reassignment; however, upon receiving this information Plaintiff failed to initiate an EEO claim. Following his realization, Plaintiff's counsel contracted the Agency's attorney on May 2, 1995 to inquire about the possibility of filing an EEO claim. However, after being cited by opposing counsel to a federal regulation which appeared to foreclose the option, Plaintiff and his counsel continued with the grievance and did not attempt to file an EEO claim. Then, on July 11, 2005, Plaintiff and his counsel met with Agency management and learned of the 45-day filing deadline. Again, Plaintiff continued with his grievance process and failed to investigate the possibility of pusuing an EEO claim. It was not until November 3, 2006, approximately 18 months after learning of his basis for an EEO claim and over a year after learning of the 45-day filing period, that Plaintiff withdrew his grievance and began the EEO process. Like the court in *Donovan*, this court finds that it would be appropriate to toll Plaintiff's filing deadline until July 11, 2005. By that date, Plaintiff and his counsel were fully aware of the allegedly discriminatory nature of his reassignment and the applicable 45-day deadline for filing a claim. Even with such tolling, however, Plaintiff's initiation of the EEO process falls far outside of the required 45-day period. Because Plaintiff claims no active misleading or withholding of information beyond July 11, 2005, the court does not believe it is appropriate to toll the time for filing an administrative charge with the EEOC beyond that date. Any such extension would have no equitable base, and would greatly undermine Plaintiff's need to diligently pursue his claim.

     Additionally, like the courts in *Martinez* and *Biester*, this court finds it highly relevant to the equitable tolling analysis that Plaintiff was represented by competent counsel during all times relevant to his claim. The court finds Plaintiff's arguments that his counsel could rely on the Agency's attorney's statement of law unpersuasive. During the May 2, 2005 phone call, the

Agency's attorney cited a specific CFR provision in support of his position. Plaintiff's counsel was then in a position to determine whether the regulation was, in fact, applicable to her client's case. Instead, counsel consciously chose to rely on opposing counsel's representation and cannot now attempt to invoke equitable tolling based on that error. Similarly, this court is not persuaded by Plaintiff's counsel's assertion that equitable tolling should be invoked because she has never previously represented a federal employee on a Title VII claim. Once counsel took on the representation, she had a duty to research and analyze the applicable law in a timely fashion.

Because Plaintiff and his counsel failed to act diligently and did not exhaust available administrative remedies, this court lacks subject matter jurisdiction to proceed to the other issues raised by the Defendant's motion. Accordingly this court grants Defendant's motion to dismiss and therefore dismisses Plaintiff's complaint.

## **Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion is GRANTED, and Plaintiff's complaint is DISMISSED with prejudice.

BY THE COURT:

_____
Dale A. Kimball
United States District Judge